## 15898.   JETER *v.* DAVIS.

1. An instruction to the jury which correctly presents the law applicable to a theory raised in the case by the defendant can not be held erroneous merely because the court did not, in the same connection, instruct the jury as to the contentions of the plaintiff.

2. In this action against a physician for cutting the plaintiff's arm for the purpose of drawing the plaintiff's blood for a transfusion, contrary to an alleged agreement whereby the plaintiff consented to the operation only upon the condition that the blood would be drawn with a needle and her arm would not be cut, the court did not err in instruct-

ing the jury in effect, with reference to an infection which subsequently developed, that the defendant would not be responsible for anything occurring after the plaintiff left the physician's charge, unless it resulted directly and proximately from the defendant's act; the instructions being warranted by the pleadings and the evidence.

3. In a *tort* action, where under the pleadings and the evidence a verdict for nominal damages may legally be found, it is error, requiring a new trial, to instruct the jury in such language as to imply that the plaintiff can not recover without affirmative proof that damage resulted from the alleged tortious act.

4. It is not reversible error that the court, in giving to the jury a requested instruction, prefaced it by the words, "I have been requested to tell you."

5. Where, in an action of the character stated in paragraph 2 above, the plaintiff alleged that the cutting of her arm was wilful and malicious, the court did not err, when charging the jury, in directing them "to look to the evidence and see whether there was intent wilfully and maliciously in this cutting," when it was apparent, from the cognate portions of the charge, that the jury were to consider the intent accompanying the act merely for the purpose of estimating the damage, in the event of a finding for the plaintiff, and that the judge did not imply, by such direction, that proof of bad motive was essential to a recovery.

6. In view of the plaintiff's allegations and evidence, the judge erred when, after stating the contentions of the defendant to the effect that what was done was with plaintiff's consent and was accomplished in the usual and proper way, he added: "Of course, if he did this thing properly and there was some form of infection from some other source or cause after this lady left his hospital, he would not be liable." This excerpt assumed the plaintiff's consent, when it was in issue and when its existence was a condition of non-liability, irrespective of the care and skill which the defendant may have employed.

7. Other assignments than those dealt with above are too imperfect to present any question for decision. Under the rulings contained in headnotes 3 and 6 and the corresponding divisions of the opinion, the court erred in overruling the plaintiff's motion for a new trial.

DECIDED APRIL 16, 1925.

Action for damages; from Fulton superior court—Judge Ellis. August 2, 1924.

*J. V. Poole,* for plaintiff.

*Underwood, Pomeroy & Haas,* for defendant.

BELL, J. Mrs. F. D. Jeter brought a suit against Dr. E. C. Davis and Davis-Fischer Sanitarium Company. The sustaining of a general demurrer filed by the company was affirmed by this court in *Jeter* v. *Davis-Fischer Sanitarium Co., 28 Ga. App.* 708 (113 S. E. 29). To the statement of the allegations of the petition there set forth, the following may be added as relevant to the case as charged against the doctor: "Petitioner shows that her said

husband went down to the office of the sanitarium to call up his home at Douglasville, and before he came back into the operating room the said doctors and nurses took petitioner and placed her on the operating table, telling her the taking of the blood from her arm would not amount to more than a pin scratch, and that the blood would be taken with a needle and she would scarcely know it; that she told the said doctors and nurses not to cut her arm, and they told petitioner they would not cut her arm and would only puncture the skin in order to get at the vein, and that it would take only a very few minutes, and she could go home in twenty or thirty minutes." "Petitioner shows that the incision in her arm was made without her knowledge and consent, and contrary to her express direction and request and over her objections, that she did not consent to have her arm cut and would not have consented to the same, that she was told by the said doctors and nurses that they would not cut her arm, and was told by them while they were actually in the act of cutting that they were not cutting her arm, but that the pain was caused by the injection of the needle, that when she complained of the pain, the doctors and nurses told her it was only the needle and would not amount to anything." "Petitioner shows that she told the said doctors and nurses that she could not bear to see blood, and that she was placed on the operating table in a position where she could not see the blood, and could not see her arm; neither could she see what the doctors and nurses were doing, and had to take their word as to what they were doing, and did not know they had cut her arm until they were sewing it up." "Petitioner shows that the said sanitarium, through and by its agents and employees, and the said Dr. E. C. Davis, mistreated, maltreated, and unlawfully abused, injured and damaged petitioner by the acts and deeds heretofore set out, and as hereafter set forth: (a) That they wilfully committed a tort on petitioner by cutting her arm over her objections and without her knowledge and consent; (b) that they perpetrated a fraud and a tort on petitioner, and caused her to allow them to put her on the operating table for the purpose of having her blood taken, by assuring her the operation would not amount to anything and would not hurt her, and, after getting her in their control on the operating table, then cutting her arm without her knowledge and consent; (d) that they deceived petitioner by telling her they would

not cut her arm, and by telling her the operation would not amount to anything harmful."

Upon the trial of the case against Dr. Davis the verdict was in favor of the defendant. The plaintiff made a motion for a new trial, which was overruled, and she excepted.

1. In one of the special grounds of the motion for a new trial complaint is made of the following charge of the court: "Of course, you will understand, if Dr. Davis did this thing properly, and if he had their consent in doing of it, and if this lady left the hospital in that condition and the wound afterwards became infected from some other reason or cause than what he had done, he would not be liable for anything that occurred in consequence." It is assigned that this charge was error for the reason that there is no proper way to commit a wilful and wrongful trespass on the person of another, and because it "confused the skill of the doctor and the right to cut plaintiff's arm to such an extent that the jury was unable to intelligently understand the said charge, and was prejudicial to the plaintiff." It is further alleged that the charge was error because there was no contention or evidence that the plaintiff's arm became infected from any other cause than the defendant's act in cutting it.

As will be observed, the plaintiff contended that although she consented to a transfusion of her blood to one of the defendant's patients, she did so only upon the condition that the blood should be extracted from her by a needle and in no other way, and that the defendant, in violation of the terms of the consent given, cut her arm with a knife, for the purpose of obtaining the blood, and thus wrongfully inflicted a serious injury. There was evidence on behalf of the plaintiff which, if believed by the jury, would have established the allegations of her complaint. On the other hand, the defendant testified, and introduced witnesses who also testified, to the effect that the plaintiff offered herself unconditionally for the purpose of the operation, and contended, therefore, that in cutting her arm he was acting with the plaintiff's consent, either express or implied. The testimony on behalf of the defendant further tended to show that the operation was performed properly, and that all proper diligence was exercised to prevent infection. While the defendant filed only a general denial to the allegations of the petition, his evidence, to which we have just alluded, was

introduced without objection. In these circumstances the jury could consider the evidence and the court was authorized to charge upon it. *Napier* v. *Strong*, 19 *Ga. App.* 401 (2) (91 S. E. 579). The excerpt from the charge of the court set out above was not adjusted to the contentions of the plaintiff, but this is no reason for holding that the charge was error, provided it was adapted to the contentions and evidence of the defendant. *Edwards* v. *Capps*, 122 *Ga.* 827 (3) (50 S. E. 943); *James* v. *Hamil*, 140 *Ga.* 168 (3) (78 S. E. 721).

The defendant would uphold the charge on the idea that the *suit*, properly construed, is one for negligence. In this position we can not concur, in view of the allegations of the complaint. The plaintiff says her action is nothing more nor less than an action for assault and battery. While it is unnecessary to determine whether this contention is correct or not, it would seem to the writer that the defendant was not guilty of a trespass upon the plaintiff's person, where her consent was given to the drawing of the blood in some way. According to her contentions he merely exceeded his authority. Where a person having license from the *law* to do an act abuses or exceeds his authority, he becomes a trespasser ab initio. But when the complaining party himself grants a license which he might have granted or not, at his option, the remedy for an abuse is not broader than the abuse itself. The licensee is not rendered a trespasser from the beginning, but is liable on the special case for any violation of the terms of the license. *Sheftall* v. *Zipperer*, 133 *Ga.* 488 (2) (66 S. E. 253, 27 L. R. A. (N. S.) 442); *Piedmont Hotel Co.* v. *Henderson*, 9 *Ga. App.* 672 (6) (72 S. E. 51). But whether the plaintiff's counsel has correctly classified the suit or not, it was not an action for negligence. And yet, since there was evidence tending to sustain the defendant's contention that the defendant and his assistants performed the operation with due skill, and also that they had the plaintiff's consent in doing it, the first assignment upon the charge is clearly without merit. Was there any evidence to authorize the inference that the wound became infected from some other reason or cause after the plaintiff left the hospital? If the plaintiff's contentions are true, the wrong committed upon her was a positive tort, even though it may not be considered as a trespass upon the person, and she was not bound to do anything to lessen the damages.

47

Civil Code (1910), § 4398; *Athens Manufacturing Co.* v. *Rucker,* 80 *Ga.* 291 (4) (4 S. E. 885) ; *Holbrook* v. *Town of Norcross,* 121 *Ga.* 319 (2) (48 S. E. 922). But if by affirmative action on her part she exposed it to infection and it be made to appear that this and not the wound was the cause of a part of the injury and suffering for which she sued, the defendant to that extent would not be responsible. He would not be relieved of responsibility, however, merely because of the plaintiff's inaction or failure to lessen the damage by ordinary care. Compare *Clements* v. *State,* 141 *Ga.* 666 (81 S. E. 1117).

As already stated, the defendant offered evidence to show that the wound was properly made and properly cared for during the time that the plaintiff was in his charge. This would be some evidence that the infection was from some independent cause. A physician who treated her at her home for some time after the operation testified: "As to what caused her arm to be infected, I don't know; she was very imprudent, she unwrapped her arm, took the dressing off, and showed it to neighbors several times. I know that to be a fact. She showed it to my wife, and put the dressing back on and showed it to Mr. Harvey, and I think part of her condition was secondary infection, infected again. It was not infected the first time I saw it, it was swollen, but that is not necessarily a sign of infection; you may have that without infection. Her arm was bound tight when I first saw it, and I released the tension, not because it was infected, but it was pretty tight, and I simply wanted to give it a little relief. That would not cause it to be infected."

We can not say that there was a total lack of evidence to show that a part of the plaintiff's trouble was brought about by her own mistreatment of the wound. The excerpt complained of is not subject to any of the exceptions taken thereto. The rulings here made will dispose of grounds 1 and 5 of the amendment to the motion for a new trial.

2. Error is also assigned upon the following charge: "That is the contention of the defendant, that they were under no duty after the operation. Of course, you will understand, after the operation and after the leaving of the hospital, that Dr. Davis would not be responsible for anything occurring that was not the direct and proximate cause, caused by this alleged infection or

injury." The assignment upon this charge interprets it as instructing the jury that the defendant could not be held responsible for anything occurring that was not the direct and proximate result of the alleged injury, but says that, even so interpreted, it was wholly unintelligible and confusing to the jury, and that it was error because the defendant would be responsible not only for the direct and proximate consequences of his act, but also for all damages sustained by the plaintiff "which were the logical and natural results of and traceable to the alleged injury or cut." We do not think the charge was subject to the criticism made of it.

In *Central Railroad* v. *Freeman*, 75 *Ga.* 331 (2), the Supreme Court held that in an action for a tort there was no error in charging the jury that the burden was on the plaintiff to show, among other things, that the injury was the direct and proximate consequence of the defendant's negligence. While this is not a case of negligence, the same rule of responsibility on the part of the wrongdoer for consequences would apply; except that, as seen in the preceding division of this opinion, the plaintiff was under no duty to lessen the damages. See also *Shields* v. *Georgia Ry. & Electric Co.*, 1 *Ga. App.* 173 (1) (57 S. E. 980) ; *Gillespie* v. *Andrews*, 27 *Ga. App.* 509 (108 S. E. 906). From what is said in the preceding division the charge was warranted by the evidence.

3. Another ground of the motion complains that the court erred in charging the jury as follows: "The burden is on her to show that this produced an injury, and the burden of proof is on her to show what the injury was and the extent of it; that is to say, those things must be shown by her before the defendant would be required to make a defense." It is assigned that this charge "was error for the reason plaintiff would be entitled to recover nominal damages when she showed the cutting of her arm was done without her consent and contrary to an agreement with Dr. Davis not to cut her arm, whether she suffered any injuries or not, and the said charge deprived her of that right." In our opinion this charge was error. It has been frequently held that in a suit for special damages alone, where the plaintiff is not entitled to recover the special damages sued for, there can be no recovery of general or nominal damages. "Generally the rule that in every case of breach of contract the other party has the right to recover nominal damages does not apply where only special and punitive damages

are sued for, and where such damages are not recoverable." *Hadden* v. *Southern Messenger Service,* 135 *Ga.* 372 (3) (69 S. E. 480). It is unnecessary to refer to other cases to the same effect, cited and relied upon by the defendant in error. It is asserted that since the plaintiff proved actual damages, she can not complain because the court would not permit her to recover nominal damages. This contention is not well taken. The plaintiff laid her entire damages generally in the sum of $30,000. She did not sue for any special or actual damages, and the measure of her recovery would be determined by the enlightened consciences of impartial jurors. If entitled to recover at all, she was entitled to recover general damages, including nominal damages. Counsel for defendant in error further say that the rule is applicable that a new trial will not be granted merely for the purpose of giving the plaintiff an opportunity to recover nominal damages. See *Sutton* v. *So. Ry. Co.,* 101 *Ga.* 776 (29 S. E. 53) ; *Fulghum* v. *Beck Duplicator Co.,* 121 *Ga.* 273 (2) (48 S. E. 901) ; *Edwards* v. *Hale,* 129 *Ga.* 302 (58 S. E. 807) ; *Adams* v. *Bridges,* 141 *Ga.* 419 (81 S. E. 203) ; *Williams* v. *Herrington,* 12 *Ga. App.* 76 (76 S. E. 757) ; *Roberts* v. *Glass,* 112 *Ga.* 456 (37 S. E. 704) ; *Bloom* v. *Americus Grocery Co.,* 116 *Ga.* 784 (3) (43 S. E. 54) ; *Hadden* v. *Southern Messenger Service,* 135 *Ga.* 372 (3) (69 S. E. 480) ; *Addington* v. *Western & Atlantic R. Co.,* 93 *Ga.* 566 (20 S. E. 71) ; Civil Code (1910), § 4397. Whether this rule would be applicable where the right to recover nominal damages is destroyed by a charge of the court need not be decided. The rule is inapplicable to actions ex delicto, such as the one in hand. *Jones* v. *Water Lot Co.,* 18 *Ga.* 539 (2) ; *Ellington* v. *Bennett,* 59 *Ga.* 286 (1) ; *Eiswald* v. *Southern Express Co.,* 60 *Ga.* 496 ; *Holmes* v. *Clisby,* 121 *Ga.* 241 (9) (48 S. E. 934, 104 Am. St. Rep. 103). General damages are such as the law presumes to flow from any tortious act, and may be recovered without proof of any amount. Civil Code (1910), § 3507. As already stated, if the plaintiff was entitled to recover at all, she would at least be entitled to recover nominal damages merely in vindication of her right, and this without actual proof of the same. The charge was susceptible of the construction that although the plaintiff may have shown that the cutting of her arm was done without her consent and contrary to an agreement with the doctor that he would not cut her arm, she

would nevertheless be required to show by affirmative proof that she had been damaged, before she would be entitled to recover. There is no escape from the conclusion that the charge was error. See, in this connection, *Byfield* v. *Candler*, 33 *Ga. App.* 275 (6) (125 S. E. 905), and cases cited.

4. The plaintiff excepts to the manner in which the court complied with one of her requests to charge, in that the court prefaced the instructions with the words, "I have been requested to tell you," etc. Under the ruling of the Supreme Court in *Dotson* v. *State*, 136. *Ga.* 243 (3) (71 S. E. 164), there is no cause for new trial in this assignment.

5. The court instructed the jury as follows: "It is claimed in this case by this plaintiff that this cutting of her arm was done not only without consent, not only contrary to an agreement not to do it, but that it was done wilfully and maliciously. You look to the evidence and see whether there was intent wilfully and maliciously in this cutting." There was no error in the failure of the court to define the words "wilfully" and "maliciously." *Hotel Equipment Co.* v. *Liddell*, 32 *Ga. App.* 590 (3) (124 S. E. 92). Nor is this excerpt subject to the complaint that it implied that proof of the defendant's bad motive was essential to a recovery, it appearing from the cognate portions of the charge that the jury must have understood that they were to consider the question of the intent merely for the purpose of estimating the damages, in the event of a finding for the plaintiff.

6. In another portion of the charge the judge instructed the jury as to the defendant's contentions, and then said: "Of course, if he did this thing properly and there was some form of infection from any other source or cause after this lady left his hospital, he would not be liable." The language quoted was error, for the reason that it failed to include as a condition of non-liability that the plaintiff consented to that which was done. If the cutting of her arm was done contrary to her consent and instructions, the defendant would be responsible whether he did it properly or not. The use of due care and sufficient skill would not relieve him.

7. Two other special grounds of the motion for new trial were as follows: "8. Movant insists that the court erred in not giving in charge the law essential and applicable to the case on trial, which case was a suit for the wilful trespass on the person of plain-

tiff." "9. Movant insists that the whole of said charge was error for the reason the material parts of the law given in charge were applicable to suits for malpractice, and not applicable to the case on trial, which sounded in trespass to the person, and was calculated to confuse and mislead the jury and cause them to believe if Dr. Davis made the transfusion in a skilful and scientific manner, plaintiff could not recover." These exceptions are entirely too general to present any question for decision. *Wade* v. *Eason*, 31 *Ga. App.* 256 (1) (120 S. E. 440) ; *Southern Railway Co.* v. *Wessinger*, 32 *Ga. App.* 551 (6) (124 S. E. 100).

In another ground of the motion for a new trial it is complained that the court allowed "the introduction of chart which is in the record, over objections that the same was not identified by any witness or otherwise as being correct." This ground is imperfect, because it does not set forth the document, in form or substance, so that this court may determine from the assignment itself what were the contents of the evidence objected to. *McCollum* v. *Thomason*, 32 *Ga. App.* 160 (8) (122 S. E. 800).

Under the rulings contained in headnotes 3 and 6 and the corresponding divisions of this opinion, the court erred in overruling the plaintiff's motion for a new trial.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*